
# FRANKLIN
COUNTY

MICHELE MAXWELL
CLERK OF THE CIRCUIT COURT AND COMPTROLLER


FLORIDA'S CLERKS OF COURT AND COMPTROLLERS
Bring You
CCIS✓ COMPREHENSIVE CASE INFORMATION SYSTEM

eportaluser

Expand All

| Case Number | Filed Date | Disposition Date | County | Case Type | Status | Contested | Jury Trial |
|---|---|---|---|---|---|---|---|
| 192022CA000062CAAXMX [22000062CAAXMX] | 08/30/2022 | | FRANKLIN | OTHER | OPEN | No | Yes |

| Filing Date | Description | Active | Contested | Judgment Date |
|---|---|---|---|---|
| 08/30/2022 | OTHER | YES | NO | - |

| Party Name | Party Type | Attorney | Bar ID |
|---|---|---|---|
| SJOSTROM, JONATHAN ERIC | JUDGE | | |
| BARRANCO, DAPHNE | PLAINTIFF | NICHOLAS, CHRISTOPHER JOHN | 768790 |
| American Automobile Insurance | DEFENDANT | | |

## Dockets

Page : 1     ALL ∨

| Image | Doc # | Action Date | Description | Pages |
|---|---|---|---|---|
| 📁 | 11 | 12/20/2022 | MOTION DEFENDANT'S MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S COMPLAINT | 2 |
| | 10 | 09/01/2022 | Judge: SJOSTROM , JONATHAN Assigned | |
| 📁 | 9 | 09/01/2022 | UNIFORM ORDER FOR ACTIVIE DIFFERENTIAL CIVIL CASE MANAGEMENT | 4 |
| 📁 | 8 | 09/01/2022 | SUMMONS ISSUED | 7 |
| | 4 | 08/31/2022 | Payment received: $410.00 Receipt Number 14 6068 | |
| | 3 | 08/31/2022 | Assessment 1 Total Assessed $410.00 Balance Remaining $0.00 | |
| 📁 | 6 | 08/30/2022 | SUMMONS TO BE ISSUED BY CLERK | 3 |
| 📁 | 7 | 08/30/2022 | COMPLAINT | 83 |
| 📁 | 5 | 08/30/2022 | CIVIL COVER SHEET | 4 |
| | 2 | 08/30/2022 | Assessment 1 assessed at sum $410.00 | |
| | 1 | 08/30/2022 | Case 192022CA000062CAAXMX Filed with Clerk on 8/30/2022 | |

| Judge Assignment History | |
|---|---|

| Court Events | |
|---|---|

| Financial Summary | |
|---|---|

| Reopen History | |
|---|---|

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.   CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>SECOND</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>FRANKLIN</u>   COUNTY, FLORIDA

<u>Daphne Barranco</u>
Plaintiff

Case # _____
Judge _____

vs.

<u>American Automobile Insurance Company</u>
Defendant

_____

### II.   AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

- ☐ $8,000 or less
- ☐ $8,001 - $30,000
- ☐ $30,001- $50,000
- ☐ $50,001- $75,000
- ☒ $75,001 - $100,000
- ☐ over $100,000.00

### III.   TYPE OF CASE      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
      ☐ Business governance
      ☐ Business torts
      ☐ Environmental/Toxic tort
      ☐ Third party indemnification
      ☐ Construction defect
      ☐ Mass tort
      ☐ Negligent security
      ☐ Nursing home negligence
      ☐ Premises liability—commercial
      ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
      ☐ Commercial foreclosure
      ☐ Homestead residential foreclosure
      ☐ Non-homestead residential foreclosure
      ☐ Other real property actions

☐ Professional malpractice
      ☐ Malpractice—business
      ☐ Malpractice—medical
      ☐ Malpractice—other professional
☒ Other
      ☐ Antitrust/Trade regulation
      ☐ Business transactions
      ☐ Constitutional challenge—statute or ordinance
      ☐ Constitutional challenge—proposed amendment
      ☐ Corporate trusts
      ☐ Discrimination—employment or other
      ☒ Insurance claims
      ☐ Intellectual property
      ☐ Libel/Slander
      ☐ Shareholder derivative action
      ☐ Securities litigation
      ☐ Trade secrets
      ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.  REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.  NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

  1

**VI.  IS THIS CASE A CLASS ACTION LAWSUIT?**
☐ yes
☒ no

**VII.  HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☐ no
☒ yes If "yes," list all related cases by name, case number, and court.
Daphne Barranco v. L.O.L.A. d/b/a Harry A's Restaurant et al, Daphne Barranco v. Fred E. Allen, et al

**VIII.  IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒ yes
☐ no

**IX.  DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
☐ yes
☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Christopher J Nicholas    Fla. Bar # 768790
    Attorney or party    (Bar # if attorney)

Christopher J Nicholas    08/30/2022

- 3 -

(type or print name)                              Date



Filing # 156452817 E-Filed 08/30/2022 06:48:45 PM

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR FRANKLIN COUNTY, FLORIDA

DAPHNE BARRANCO, individually and
As Assignee of L.O.L.A.Q. LLC d/b/a
HARRY A'S RESTAURANT BAR,
NIGHTCLUB,

      Plaintiff,

Case No.: 22-000042-CA

v.

AMERICAN AUTOMOBILE
INSURANCE COMPANY,

      Defendant.

_____/

## SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this Summons, a copy of the Complaint, and Uniform

Order for Active, Differential Case Management upon the Defendant:

**AMERICAN AUTOMOBILE INSURANCE COMPANY**
**c/o Chief Financial Officer, Department of Financial Services**
**200 East Gaines Street**
**Tallahassee, Florida 32399**

      Each defendant is required to serve written defenses to the Complaint upon Christopher

Nicholas, Plaintiffs' attorney, whose address is 3522 Thomasville Road, Suite 200, Tallahassee,

Florida 32309, within twenty days after service of this Summons on that defendant, exclusive of

the day of service, and to file the original of the defenses with the Clerk of this Court either before

service on Plaintiffs' attorney or immediately thereafter. If a defendant fails to do so, a default

will be entered against that defendant for the relief demanded in the Complaint or Petition.

DATED on this _1st_ day of August, 2022.

MICHELE MAXWELL, CLERK OF THE COURT

By: _[signature]_
Deputy Clerk

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

**If you are a person with a disability who needs accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator 301 South Monroe Street, Tallahassee, Florida 32301, (850) 606-4400, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes

interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecu-tifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egale-ment, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

Plaintiff/Plaintiff's Attorney.

 Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
11/22/2022
CT Log Number 542720562

## Service of Process Transmittal Summary

**TO:**  Twilla Sawyer
Allianz Global Corporate & Specialty
225 W WASHINGTON ST STE 1800
CHICAGO, IL 60606-3458

**RE:**  **Process Served in Florida**

**FOR:**  American Automobile Insurance Company  (Domestic State: MO)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | DAPHNE BARRANCO, Individually and as Assignee of L.O.L.A.Q. LLC d/b/a HARRY A?S RESTAURANT, BAR, NIGHTCLUB vs. AMERICAN AUTOMOBILE INSURANCE COMPANY |
| **CASE #:** | 22000062CA |
| **NATURE OF ACTION:** | Insurance Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, Plantation, FL |
| **DATE/METHOD OF SERVICE:** | By Electronic Receipt on 11/22/2022 at 00:00 |
| **JURISDICTION SERVED:** | Florida |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Twilla Sawyer  twilla.sawyer@agcs.allianz.com |
| | Email Notification,  Jamica Davis  jamica.davis@agcs.allianz.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 1200 South Pine Island Road |
| | Plantation, FL 33324 |
| | 877-564-7529 |
| | MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

*22-000445767*

CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

DAPHNE BARRANCO

PLAINTIFF(S)

VS.

AMERICAN AUTOMOBILE UNSURANCE
COMPANY

DEFENDANT(S)
_____/

| | |
|---|---|
| **CASE #:** | **22-000062-CA** |
| **COURT:** | **CIRCUIT COURT** |
| **COUNTY:** | **FRANKLIN** |
| **DFS-SOP #:** | 22-000445767 |

SUMMONS, COMPLAINT, UNIFORM ORDER FOR ACTIVE DIFFERENTIAL CIVIL CASE MANAGEMENT

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Monday, November 21, 2022 and a copy was forwarded by ELECTRONIC DELIVERY on Tuesday, November 22, 2022 to the designated agent for the named entity as shown below.

AMERICAN AUTOMOBILE INSURANCE COMPANY
DONNA MOCH
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL 33324

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080**

Jimmy Patronis

Jimmy Patronis
Chief Financial Officer

PAMELA ANN BICKETT
PARALEGAL
FASIG BROOKS
3522 THOMASVILLE ROAD SUITE 200
3522 THOMASVILLE ROAD SUITE 200
TALLAHASSEE, FL 32309

JD1

Filing # 156452817 E-Filed 08/30/2022 06:48:45 PM

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR FRANKLIN COUNTY, FLORIDA

DAPHNE BARRANCO, individually and
As Assignee of L.O.L.A.Q. LLC d/b/a
HARRY A'S RESTAURANT BAR,
NIGHTCLUB,

       Plaintiff,

Case No.: 22-000042-CA

v.

AMERICAN AUTOMOBILE
INSURANCE COMPANY,

       Defendant.

_____/

## SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this Summons, a copy of the Complaint, and Uniform

Order for Active, Differential Case Management upon the Defendant:

**AMERICAN AUTOMOBILE INSURANCE COMPANY**
**c/o Chief Financial Officer, Department of Financial Services**
**200 East Gaines Street**
**Tallahassee, Florida 32399**

      Each defendant is required to serve written defenses to the Complaint upon Christopher

Nicholas, Plaintiffs' attorney, whose address is 3522 Thomasville Road, Suite 200, Tallahassee,

Florida 32309, within twenty days after service of this Summons on that defendant, exclusive of

the day of service, and to file the original of the defenses with the Clerk of this Court either before

service on Plaintiffs' attorney or immediately thereafter.  If a defendant fails to do so, a default

will be entered against that defendant for the relief demanded in the Complaint or Petition.

DATED on this _1st_ day of August, 2022.

MICHELE MAXWELL, CLERK OF THE CIRCUIT COURT

By: _[signature]_
Deputy Clerk

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

**If you are a person with a disability who needs accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator 301 South Monroe Street, Tallahassee, Florida 32301, (850) 606-4400, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes

interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecu-tifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egale-ment, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

Plaintiff/Plaintiff's Attorney.

**IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT**
**IN AND FOR FRANKLIN COUNTY, FLORIDA**

DAPHNE BARRANCO, Individually and
as Assignee of L.O.L.A.Q. LLC
d/b/a HARRY A'S RESTAURANT,
BAR, NIGHTCLUB

      Plaintiff,

v.                                 CASE NO.:

AMERICAN AUTOMOBILE
INSURANCE COMPANY,

      Defendant.

_____/

## COMPLAINT

      COMES NOW the Plaintiff, DAPHNE BARRANCO, Individually and as Assignee of L.O.L.A.Q. LLC d/b/a HARRY A'S RESTAURANT, BAR, NIGHTCLUB, (hereinafter "Plaintiff"), by and through her undersigned attorneys, and brings the present suit against the Defendant, AMERIAN AUTOMOBILE INSURANCE COMPANY (hereinafter "AMERICAN") as follows:

      1.   This is a cause of action for damages in excess of $30,000.00, exclusive of costs and attorney's fees.

      2.   At all times material hereto, DAPHNE BARRANCO was a resident of Dale County, Alabama.

      3.   At all times material hereto, L.O.L.A.Q., LLC d/b/a HARRY A'S RESTAURANT, BAR, NIGHTCLUB was a Florida Limited Liability Company, authorized to conduct and was conducting business in Franklin County, Florida.

      4.   At all times material hereto, the Defendant, AMERICAN, was a foreign, for-profit corporation authorized to do business and doing business in Franklin County, Florida.

5.   Defendant, AMERICAN, issued a Commercial Liability Insurance Policy, under Policy No. SAG 2001263-18, to L.O.L.A.Q., LLC, d/b/a HARRY A'S RESTAURANT, BAR, NIGHTCLUB, for the policy period February 5, 2018 to February 5, 2019 (hereinafter "the insurance policy"), a copy of is attached hereto as "Exhibit A."

6.   The insurance policy insured L.O.L.A.Q, LLC and the premises located at 28 West Bayshore Drive, on St. George Island, Franklin County, Florida (hereinafter the "business").

7.   That on or about August 31, 2018 DAPHNE BARRANCO and her husband were patrons and business invitees of L.O.L.A.Q. LLC at which time DAPHNE BARRANCO suffered personal injuries and damages.

8.   DAPHNE BARRANCO subsequently brought suit against L.O.L.A.Q. LLC for said injuries and damages (see Exhibit "B" which is attached hereto and incorporated herein by reference).

9.   Both prior and subsequent to DAPHNE BARRANCO filing the lawsuit referenced as Exhibit "B", AMERICAN's agents, employees and/or authorized representatives wrongfully maintained that no coverage existed under the insurance policy attached as Exhibit "A" because a) of the insurance policy's assault and battery exclusion and b) due to late notice (see Exhibit "C").

10.   DAPHNE BARRANCO and L.O.L.A.Q. LLC have entered into the attached Assignment agreement due to the improper and incorrect defense and coverage positions maintained by AMERICAN (see Exhibit "D" attached hereto and incorporated herein by reference).

11.   There exists a present, ascertained or ascertainable set of facts a n d / or present controversy as to the rights and obligations of the parties due to AMERICAN's improper and wrongful denial of defense and coverage obligations.

12.   By virtue of the Assignment attached as Exhibit "D", Plaintiff has power and authority to bring the present action directly against AMERICAN for its breach of the insurance policy and the wrongful denial of its defense and insurance coverage obligations to L.O.L.A.Q., LLC.

13.   Due to AMERICAN's incorrect and wrongful coverage and defense positions, it is liable to the Plaintiff herein for the Final Judgment that was entered against L.O.L.A.Q., LLC d/b/a HARRY A's on September 10, 2021 by the Honorable Jonathan Sjostrom in the amount of $304,926.47, plus accrued and accruing interest (see Exhibit "E", attached hereto and incorporated herein).

14.   In addition, AMERICAN is liable for attorney's fees and costs for Plaintiff having to bring and maintain the present cause of action against it.

WHEREFORE the Plaintiff, DAPHNE BARRANCO, Individually and as Assignee of L.O.L.A.Q. LLC d/b/a HARRY A'S RESTAURANT, BAR, NIGHTCLUB demands judgment against the Defendant AMERIAN AUTOMOBILE INSURANCE COMPANY for damages, litigation costs, and such other relief this Court deems just and proper. Plaintiff further demands a jury trial on all issues so triable as a matter of right.

Respectfully submitted this 30th day of August, 2022.

Christopher J. Nicholas (FBN: 768790)
**FASIG│BROOKS**
3522 Thomasville Road, Suite 200
Tallahassee, FL  32309
(850) 224-3310 Telephone
(850) 224-3433 Facsimile
Email: Chris@fasigbrooks.com
pamela@fasigbrooks.com
lisak@fasigbrooks.com
*Counsel for Plaintiff*



## Policyholder Message - 385767 08 17

---

**Information to Policyholders**

Questions about your insurance should be directed to your agent or broker. Additionally, Allianz provides you with a telephone number to present inquiries or obtain information about coverage, and to provide assistance in resolving complaints. The telephone number is 888-466-7883.

© 2017 Allianz Global Risks US Insurance Company. All rights reserved.





# Policyholder Message - Silica Particles Exclusion - 386396 05 04

**Named Insured: Harry A's**                                    **Policy Number: SAG 2001263-18**

THIS MESSAGE IS INTENDED TO ALERT YOU OF CHANGES TO YOUR POLICY. THIS MESSAGE DOES NOT REPLACE ANY PROVISION OF YOUR POLICY OR ANY ENDORSEMENT TO YOUR POLICY. PLEASE REVIEW YOUR POLICY AND THE ENDORSEMENTS FOR COMPLETE COVERAGE INFORMATION.

**Silica Particles Exclusion**

Your policy contains a silica particles exclusion.

As always, you are encouraged to contact your Allianz company insurance representative if you have any questions about this message, your policy or your premium.

386396 5-04
© 2015 Allianz Global Corporate & Specialty.  All rights reserved

# Policyholder Message -  386659  01  18

## Information to Policyholders

All claims should be reported to Specialty Insurance Agency, Inc., the authorized administrator for Allianz Global Risks US Insurance Company d/b/a Allianz Global Corporate and Specialty, in one of the following three ways:

1. Email:      newclaim@specialtyagency.com
2. Call:       Toll Free at (888) 729-7900
3. Fax:        (732) 701-8969

To expedite the handling of your new claim, the following information must be provided in your claim report:

a. Policy Number
b. Named Insured
c. Claimant Name(s)
d. Claim Description
e. Pertinent documents, including but not limited to demands, notices, summonses, legal papers, suits, complaints, letters of representation, and all other available relevant documents and correspondence.

**COMMON POLICY DECLARATIONS**

Coverage is provided by the following company, a stock company

American Automobile Insurance Company
225 W. Washington Street, Suite 1800
Chicago, IL 60606-3484
(888) 466-7883



**Policy No. SAG 2001263-18**

| **Named Insured & Address:** | **Producer Name & Address:** |
|---|---|
| LOLAQ LLC | Specialty Insurance Agency, Inc. |
| Harry A's | 1610 Route 88  Suite 102 |
| 28 West Bayshore Drive | Brick NJ   08724 |
| St. George Island FL  32328 | |

Policy Period: From 02/05/2018 to 02/05/2019 at 12:01 A.M. Standard
             Time at your mailing address shown above.

Business Description: Tavern
In return for the payment of the premium, and subject to all of the
terms of this policy, we agree with you to provide the insurance as
stated in this policy.

This policy consists of the following coverage parts. The premium
indicated may be subject to adjustment.

|  | PREMIUM |
|---|---|
| Commercial Liability Coverage Part | 5,651.00 |
| Liquor Liability Coverage Part | 3,080.00 |
| TOTAL PREMIUM | $8,731.00 |

Premium is payable in full at inception.

Forms applicable to more than one coverage part:

-- See attached Schedule of Forms and Endorsements - TRILDS03FL --

Countersigned 02/13/2018 By: _____

This is the first page of policy SAG 2001263-18.
The next page is a Schedule of Forms and Endorsements.

These declarations, together with the common policy conditions, coverage
part declarations, coverage forms and endorsements, if any, issued to form
a part thereof, complete the contract of insurance.

©Allianz Global Corporate & Specialty. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

TRILDS01  01-16                                              02/13/2018

Insured's Copy

## SCHEDULE OF FORMS AND ENDORSEMENTS for SAG 2001263-18

| Form | Effective | |
|------|-----------|--|
| TRIL1001FL | 0116 | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |
| IL 00 17 | 1198 | COMMON POLICY CONDITIONS |
| 145985 | 0614 | Economic or Trade Sanctions Compliance |
| IL 00 21 | 0908 | Nuclear Energy Liability Exclusion Endorsement-Broad Form |
| IL 09 85 | 0115 | Disclosure Pursuant to Terrorism Risk Insurance Act |
| TRCGTC-1 | 0116 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG 00 01 | 1207 | Commercial General Liability Coverage Form |
| CG 00 68 | 0509 | Record.And Dist.Of Material Or Info.In Viol.Of Law Exclus |
| CG 02 20 | 0312 | Florida Changes - Cancellation and Nonrenewal |
| CG 21 06 | 0514 | Exclusion-Access or Disclosure of Confidential or Persona |
| CG 21 35 | 1001 | EXCLUSION - COVERAGE C - MEDICAL PAYMENTS |
| CG 21 46 | 0798 | ABUSE OR MOLESTATION EXCLUSION |
| CG 21 47 | 1207 | Employment-Related Practices Exclusion |
| CG 21 49 | 0999 | Total Pollution Exclusion |
| CG 21 60 | 0998 | Exclusion-Yr 2000 Comptr-Related & other Electrnc Problem |
| CG 21 67 | 1204 | Fungi or Bacteria Exclusion |
| CG 21 75 | 0115 | Exclusion of Certified Acts of Terrorism and Exclusion of |
| TRCG1001FL | 0116 | EXCLUSION ⊠ ASBESTOS LIABILITY |
| TRCG1002FL | 0116 | EXCLUSION ⊠ LEAD LIABILITY |
| CG 21 96 | 0305 | Silica or Silica-Related Dust Exclusion |
| CG 24 07 | 0196 | PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED |
| CG 24 26 | 0704 | Amendment of Insured Contract Definition |
| TRCG1006FL | 0116 | EXCLUSION ⊠ ASSAULT AND BATTERY |
| TRCGTC-2 | 0116 | LIQUOR LIABILITY COVERAGE FORM |
| CG 00 33 | 1207 | Liquor Liability Coverage Form |
| TRIL1000 | 0116 | Signature Page |

©Allianz Global Corporate & Specialty. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

TRILDS03FL 01-16

Insured's Copy

**COPIES TABLE for SAG 2001263-18**

---

Named Insured & Address:                               Producer Name & Address

LOLAQ LLC                                     Specialty Insurance Agency, Inc.
Harry A's                                     1610 Route 88  Suite 102
28 West Bayshore Drive                        Brick NJ  08724

St. George Island FL  32328


        1   Managing General Agent's
        2   Insured's
        3   Extra
        4   Broker's                    USG Insurance Services, Tampa
                                        3810 Northdale Blvd., STE 190
                                        Tampa FL  33624

---

©Allianz Global Corporate & Specialty. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

---

Insured's Copy

**COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS**

Coverage is provided by the following company, a stock company
American Automobile Insurance Company
225 W. Washington Street, Suite 1800
Chicago, IL  60606-3484
(888) 466-7883



Policy No: SAG 2001263-18 AT 12:01 AM Standard Time EFFECTIVE DATE: 02/05/2018

**THIS POLICY IS SUBJECT**
**TO AGGREGATE LIMITS**

**LIMITS OF INSURANCE:**

| | |
|---|---|
| General Aggregate Limit | 2,000,000 |
| (Other than Products/Completed Operations) | |
| Products/Completed Aggregate Limit | 2,000,000 |
| Personal & Advertising Injury Limit | 1,000,000 |
| Each Occurence Limit | 1,000,000 |
| Damage to Premises Rented to You   Any one premises | 100,000 |
| Medical Expense Limit     Any one person | 0 |

**BUSINESS DESCRIPTION AND LOCATION OF PREMISES:**

Form of Business: Corporation
Business Description: Tavern

Location of all premises you own, rent, or occupy: See the
attached schedule of covered premises/operations.

**CLASSIFICATIONS:**

The classifications applicable to this coverage form may be
found on the attached schedule of covered/premises operations.

**FORMS AND ENDORSEMENTS:**

Forms and Endorsements applying to this Coverage Part and made
part of this policy at time of issue:


-- See attached Schedule of Forms and Endorsements - TRILDS03FL --

These declarations are part of the Common Policy Declarations
containing the name of the insured and the policy period.

©Allianz Global Corporate & Specialty. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

TRCGDS01FL 01-16                                                    02/13/2018

Insured's Copy

**SCHEDULE OF COVERED PREMISES/OPERATIONS**

Policy No: SAG 2001263-18 At 12:01 AM Standard Time EFFECTIVE DATE: 02/05/2018

PREM. NO.                    Location:    28 West Bayshore Drive
    1
                                          St. George Island FL   32328

Business Description: Tavern

Subline: Premises/Operations    334

Classification #: 1
Classification Code : 16915
Desc: Restaurants - Alcohol >= 30% and < 75% of Receipts - Dance Floor

Exposure:  1,290,000

Subline: Premises/Operations    334

Classification #: 2
Classification Code : 60010
Desc: Apartment Buildings

Exposure:            1

Subline: Products/Completed Operations 336

Classification #: 1
Classification Code : 16915
Desc: Restaurants - Alcohol >= 30% and < 75% of Receipts - Dance Floor

Exposure:  1,290,000

©Allianz Global Corporate & Specialty. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

TRCGDS03FL 01-16                                              Page 1

Insured's Copy

**SCHEDULE OF COVERED PREMISES/OPERATIONS        continued**

Policy No: SAG 2001263-18 At 12:01 AM Standard Time EFFECTIVE DATE: 02/05/2018

Notice    :  This policy contains a Loss Control Fee

  Premium   :  $25

©Allianz Global Corporate & Specialty. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

TRCGDS03FL 01-16                                                      Page 2

Insured's Copy

**LIQUOR LIABILITY COVERAGE PART DECLARATIONS**

Coverage is provided by the following company, a stock company

American Automobile Insurance Company
225 W. Washington Street, Suite 1800
Chicago, IL  60606-3484
(888) 466-7883



---

Policy No: SAG 2001263-18 AT 12:01 AM Standard Time EFFECTIVE DATE: 02/05/2018

---

**LIMITS OF INSURANCE:**
   For aggregate limit and each common cause limit see the attached
   schedule of covered liquor locations.

---

**BUSINESS DESCRIPTION AND LOCATION OF PREMISES:**
   Form of Business: Corporation
   Business Description: Tavern

   Location of all premises you own, rent, or occupy: See the
   attached schedule of covered liquor locations.

---

**CLASSIFICATIONS:**
   The classifications applicable to this coverage form may be
   found on the attached schedule of covered liquor locations.

---

**FORMS AND ENDORSEMENTS:**
   Forms and Endorsements applying to this Coverage Part and made
   part of this policy at time of issue:


   -- See attached Schedule of Forms and Endorsements - TRILDS03FL --

---

These declarations are part of the Common Policy Declarations
containing the name of the insured and the policy period.

©Allianz Global Corporate & Specialty. All rights reserved.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

TRCGDS04FL 01-16                                                    02/13/2018

---

Insured's Copy

## SCHEDULE OF COVERED LIQUOR LOCATIONS

Policy No: SAG 2001263-18 At 12:01 AM Standard Time EFFECTIVE DATE: 02/05/2018

PREM. NO.                    Location:

        1                                  28 West Bayshore Drive

                                           St. George Island FL   32328

    Business Description: Tavern

Coverage: Liquor Liability

Aggregate Limit:           1,000,000
Each Common Cause Limit:   1,000,000

Rating Basis:      500,000
Premium:             3,080

    Forms Applicable: CG 00 33

©Allianz Global Corporate & Specialty. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
TRCGDS06FL 01-16                                                    Page 1

American Automobile Insurance Company

**INTERLINE**
**TRIL1001FL 01-16**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT.  THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO
# TERRORISM RISK INSURANCE ACT

☐  This policy **includes** coverage for Certified Acts of Terrorism.   Please refer to the applicable charge(s) below.

☒  This policy **excludes** coverage for Certified Acts of Terrorism.

### SCHEDULE

| | |
|---|---|
| **This Policy Consists Of The Following Charges For Certified Acts Of Terrorism** | **PREMIUM** |
| Terrorism | $ |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** | |
| Commercial General Liability | |
| **Additional information, if any, concerning the terrorism premium:** | |

© Allianz Global Corporate & Specialty. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc with its permission

American Automobile Insurance Company

**INTERLINE**
**TRIL1001FL 01-16**

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage of that portion of the amount of such insured losses that exceeds the applicable insurer deductible. That percentage is 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81%

beginning on January 1, 2019 and 80% beginning on January 1, 2020, However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portions of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Allianz Global Corporate & Specialty. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc with its permission

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

      Copyright, Insurance Services Office, Inc., 1998       □

# Economic or Trade Sanctions Compliance – 145985 06 14
Policy Amendment

The following is added to the Policy and replaces any other provision in the Policy addressing economic or trade sanctions:

This insurance does not apply to the extent that economic or trade sanctions or other laws or regulations prohibit us (the Company) from providing insurance.

All other terms and conditions of the policy remain unchanged.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the **Fireman's Fund Insurance Companies** as named in the policy

145985 6-14
© 2014 Fireman's Fund Insurance Company, Novato, CA. All rights reserved.

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

  **(a)** Any "nuclear reactor";

  **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

  **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

  **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007
□

POLICY NUMBER:  SAG 2001263-18

**IL 09 85 01 15**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE – PART I |
|---|
| **Terrorism Premium (Certified Acts)** $ |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| **Commercial General Liability** |
| **Additional information, if any, concerning the terrorism premium:** |

| SCHEDULE – PART II |
|---|
| **Federal share of terrorism losses      82      % Year: 20  18** |
| (Refer to Paragraph **B.** in this endorsement.) |
| **Federal share of terrorism losses      81      % Year: 20  19** |
| (Refer to Paragraph **B.** in this endorsement.) |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

 © Insurance Services Office, Inc., 2015

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

 © Insurance Services Office, Inc., 2015 IL 09 85 01 15

American Automobile Insurance Company

# COMMERCIAL GENERAL LIABILITY
# COVERAGE FORM

General......................................................................................................................................... 1

Section I – Coverages....................................................................................................................... 1
Coverage A Bodily Injury And Property Damage Liability Insuring Agreement ............................... 1
Coverage A Bodily Injury And Property Damage Liability Exclusions ............................................. 2
Coverage B Personal And Advertising Injury Liability Insuring Agreement ..................................... 6
Coverage B Personal And Advertising Injury Liability Exclusions ................................................... 6
Coverage C Medical Payments Insuring Agreement....................................................................... 7
Coverage C Medical Payments Exclusions .................................................................................... 8
Supplementary Payments – Coverages A And B ........................................................................... 8

Section II – Who Is An Insured ........................................................................................................ 9

Section III – Limits of Insurance...................................................................................................... 10

Section IV – Commercial General Liability Coverage...................................................................... 10

Section V – Definitions .................................................................................................................... 12

© Allianz Global Corporate & Specialty. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc with its permission

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 07

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

  **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

  **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

  **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

  **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2006

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2006

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    (b) the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2006

CG 00 01 12 07

☐

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

 © ISO Properties, Inc., 2006 □

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

    This insurance does not apply to:

    **a. Knowing Violation Of Rights Of Another**

    "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

    **b. Material Published With Knowledge Of Falsity**

    "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

    **c. Material Published Prior To Policy Period**

    "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

    **d. Criminal Acts**

    "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

    **e. Contractual Liability**

    "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

    **f. Breach Of Contract**

    "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

    **g. Quality Or Performance Of Goods – Failure To Conform To Statements**

    "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

    **h. Wrong Description Of Prices**

    "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

    **i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

    "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

    However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

    **j. Insureds In Media And Internet Type Businesses**

    "Personal and advertising injury" committed by an insured whose business is:

        **(1)** Advertising, broadcasting, publishing or telecasting;

        **(2)** Designing or determining content of websites for others; or

       © ISO Properties, Inc., 2006        **CG 00 01 12 07**    □

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

 © ISO Properties, Inc., 2006

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

© ISO Properties, Inc., 2006

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

  **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

  **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

  **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

  **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

  **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

  **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

   **(1)** "Bodily injury" or "personal and advertising injury":

      **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

      **(d)** Arising out of his or her providing or failing to provide professional health care services.

   **(2)** "Property damage" to property:

      **(a)** Owned, occupied or used by,

      **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

      you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

© ISO Properties, Inc., 2006

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A**; and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2006

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2006
CG 00 01 12 07    ☐

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  **(2)** The providing of or failure to provide warnings or instructions.

 **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

 **a.** Means:

  **(1)** Work or operations performed by you or on your behalf; and

  **(2)** Materials, parts or equipment furnished in connection with such work or operations.

 **b.** Includes:

  **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

  **(2)** The providing of or failure to provide warnings or instructions.

 © ISO Properties, Inc., 2006 **CG 00 01 12 07**  ☐

COMMERCIAL GENERAL LIABILITY
CG 00 68 05 09

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **q.** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p.** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 © Insurance Services Office, Inc., 2008 ☐

COMMERCIAL GENERAL LIABILITY
CG 02 20 03 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

  **2. Cancellation Of Policies In Effect**

    **a. For 90 Days Or Less**

      If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

      **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      **(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

        **(a)** A material misstatement or misrepresentation; or

        **(b)** A failure to comply with the underwriting requirements established by the insurer.

    **b. For More Than 90 Days**

      If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

      **(1)** Nonpayment of premium;

      **(2)** The policy was obtained by a material misstatement;

      **(3)** Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

      **(4)** A substantial change in the risk covered by the policy; or

      **(5)** The cancellation is for all insureds under such policies for a given class of insureds.

      If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

        **(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        **(b)** 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is replaced by the following:

  **3.** We will mail or deliver our notice to the first Named Insured at the last mailing address known to us.

© Insurance Services Office, Inc., 2011

**C.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

    **5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

    If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

    The cancellation will be effective even if we have not made or offered a refund.

**D.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

    **1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

    **2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© Insurance Services Office, Inc., 2011

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

(1) Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

(2) The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

POLICY NUMBER:_SAG 2001263-18

**COMMERCIAL GENERAL LIABILITY**
**CG 21 35 10 01**

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| **Description And Location Of Premises Or Classification:** |
| --- |
|  |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section **I** – Coverage **C** – Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

2. The following is added to Section **I** – Supplementary Payments:

   h. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

COMMERCIAL GENERAL LIABILITY
CG 21 46 07 98

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2.,
Exclusions** of **Section I – Coverage A – Bodily
Injury And Property Damage Liability** and Para-
graph **2., Exclusions** of **Section I – Coverage B –
Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury",
"property damage" or "personal and advertising
injury" arising out of:

**1.** The actual or threatened abuse or molestation by
anyone of any person while in the care, custody
or control of any insured, or

**2.** The negligent:

    **a.** Employment;

    **b.** Investigation;

    **c.** Supervision;

    **d.** Reporting to the proper authorities, or failure
to so report; or

    **e.** Retention;
of a person for whom any insured is or ever was
legally responsible and whose conduct would be
excluded by Paragraph 1. above

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

COMMERCIAL GENERAL LIABILITY
CG 21 60 09 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" (or "personal and advertising injury" if defined as such in your policy) arising directly or indirectly out of:

**a.** Any actual or alleged failure, malfunction or inadequacy of:

  **(1)** Any of the following, whether belonging to any insured or to others:

   **(a)** Computer hardware, including microprocessors;

   **(b)** Computer application software;

   **(c)** Computer operating systems and related software;

   **(d)** Computer networks;

   **(e)** Microprocessors (computer chips) not part of any computer system; or

   **(f)** Any other computerized or electronic equipment or components; or

  **(2)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **2.a.(1)** of this endorsement

  due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

**b.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **2.a.** of this endorsement.

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc.,  2003

COMMERCIAL GENERAL LIABILITY
CG 21 75 01 15

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism", or out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    **a.** Physical injury that involves a substantial risk of death; or

    **b.** Protracted and obvious physical disfigurement; or

    **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

© Insurance Services Office, Inc., 2015

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

**b.** The act resulted in damage:

**(1)** Within the United States (including its territories and possessions and Puerto Rico); or

**(2)** Outside of the United States in the case of:

**(a)** An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

**(b)** The premises of any United States mission; and

**c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2015 CG 21 75 01 15

American Automobile Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ASBESTOS LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.** The following exclusion is added to the Commercial General Liability Coverage Form under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability** and **Paragraph 2., Exclusions** of **Section I – Coverage C – Medical Payments**:

The following exclusion is added to the Products/Completed Operations Liability Coverage Form and the Owners and Contractors Protective Liability Coverage Form under Paragraph **2., Exclusions** of **Section I – Bodily Injury and Property Damage Liability**:

The following exclusion is added to the Railroad Protective Liability Coverage Form under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Physical Damage to Property**:

**2. Exclusions**

This insurance does not apply to:

**Asbestos Liability**

**a.** "Bodily Injury", "property damage", or "personal and advertising injury" or any other loss, cost or expense, arising, in whole or in part, out of the actual, alleged, threatened or suspected presence of, ingestion of, inhalation of, absorption of, manufacture of, use of, sale of, installation of, removal of, distribution of, contact with or exposure to asbestos in any form or any product containing asbestos;

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of asbestos, by any insured or by any other person or entity.

All other terms and conditions of this policy remain unchanged.

© Allianz Global Corporate & Specialty. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc with its permission

American Automobile Insurance Company

**COMMERCIAL GENERAL LIABILITY**
**TRCG1002FL 01-16**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – LEAD LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.** The following exclusion is added to the Commercial General Liability Coverage Form under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability** and **Paragraph 2., Exclusions** of **Section I – Coverage C – Medical Payments**:

The following exclusion is added to the Products/Completed Operations Liability Coverage Form and the Owners and Contractors Protective Liability Coverage Form under Paragraph **2., Exclusions** of **Section I – Bodily Injury and Property Damage Liability**:

The following exclusion is added to the Railroad Protective Liability Coverage Form under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Physical Damage to Property**:

**2. Exclusions**

This insurance does not apply to:

**Lead Liability**

**a.** "Bodily Injury", "property damage", or "personal and advertising injury" or any other loss, cost or expense, arising, in whole or in part, out of the actual, alleged, threatened or suspected presence of, ingestion of, inhalation of, absorption of, manufacture of, use of, sale of, installation of, removal of, distribution of, contact with or exposure to lead in any form or any product containing lead;

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of lead, by any insured or by any other person or entity.

All other terms and conditions of this policy remain unchanged.

© Allianz Global Corporate & Specialty. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc with its permission

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Pr perties, Inc., 2004

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

CG 24 07 01 96

# PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | | Policy No. |
|---|---|---|
| 02/05/2018 | 12:01 A.M. standard time | SAG 2001263-18 |
| Named Insured<br>Harry A's | | Countersigned by |

(Authorized Representative)

### SCHEDULE

**Description of Premises and Operations:**

Tavern

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf.

Paragraph **a.** of the definition of "Products-completed operations hazard" in the DEFINITIONS Section is replaced by the following:

"Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

POLICY NUMBER:

**COMMERCIAL GENERAL LIABILITY**
**CG 24 26 07 04**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

**9.** "Insured contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2004

American Automobile Insurance Company

**COMMERCIAL GENERAL LIABILITY**
**TRCG1006FL 01-16**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – ASSAULT AND BATTERY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM

**A.** The following exclusion is added to the Commercial General Liability Coverage Form, Paragraph **2., Exclusions** of **Section I – Coverages – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverages – Personal And Advertising Injury Liability** and the Liquor Liability Coverage Form, Paragraph **2., Exclusions** of **Section I – Liquor Liability Coverage** and the Products/Completed Operations Liability Coverage Form, Paragraph **2., Exclusions** of **Section I – Coverages – Products/Completed Operations:**

**2. Exclusions**

This insurance does not apply to:

**Assault and Battery**

**(1)** "Bodily injury", "property damage", "injury" or "personal and advertising injury" arising from the following:

    **(a)** "assault and battery" or any act or omission in connection with the prevention or suppression of such acts; or

    **(b)** harmful or offensive contact between or among two or more persons; or

    **(c)** apprehension of harmful or offensive contact between or among two or more persons; or

    **(d)** threats by words or deeds.

**(2)** This exclusion applies regardless of  the degree of culpability or intent and without regard to:

    **(a)** whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, "employees",

agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person;

**(b)** the alleged failure of the insured or his officers, "employees", agents or servants in the hiring, supervision, retention or control of any person, whether or not an officer, "employee", agent or servant of the insured;

**(c)** the alleged failure of the insured or his officers, "employees", agents or servants to attempt to prevent, bar or halt any such conduct.

**(3)** This exclusion also applies to any claims by any other person, firm or organization, asserting rights derived from or contingent upon any person asserting a claim excluded under subparagraphs **(2) (a), (b) or (c)** above; specifically excluding from coverage claims for:

**(a)** emotional distress or for loss of society, services, consortium and/or income; or

**(b)** reimbursement for expenses  (including but not limited to medical expenses, hospital expenses and wages) paid or incurred by such other person, firm or organization; or

**(c)** any obligation to share damages with or repay someone who must pay damages because of the injury.

**B.** Commercial General Liability Coverage Form, Exclusion **a.(1)** of Paragraph **2., Exclusions** of **Section I – Coverage B – Personal and**

**Advertising Injury Liability** is replaced by the following:

**(1) Knowing Violation Of Rights Of Another**

© Allianz Global Corporate & Specialty. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc with its permission

American Automobile Insurance Company

**COMMERCIAL GENERAL LIABILITY**
**TRCG1006FL 01-16**

Expected or intended, caused by or at the direction of the insured with or without the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**C.** The following is added to the Commercial General Liability Coverage Form, Products/Completed Operations Coverage Form and Liquor Liability Coverage Form, **Section V – Definitions**:

"Assault and Battery" means:

**a.** Actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, his "employees", patrons or any other persons; or

**b.** The failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault; or

**c.** Battery; or

**d.** The negligent:

  **(1)** Employment;

  **(2)** Investigation;

  **(3)** Supervision;

  **(4)** Training;

  **(5)** Retention

of a person for whom any insured is or ever was legally responsible and whose conduct is described in **a.**, **b.**, **c.** and **d.** above.

**e.** The alleged failure of the insured or his officers, "employees", agents or servants to attempt to prevent, bar or halt any such conduct.

**f.** "Assault and Battery" includes, but is not limited to, sexual assault and battery.

This endorsement also applies to any claims by any other person, firm or organization, asserting rights derived from or contingent upon any person asserting a claim excluded under subparagraphs **a.**, **b.**, **c.**, **d.**, **e.** and **f.** above; specifically excluding from coverage claims for:

**(1)** emotional distress or for loss of society, services, consortium and/or income; or

**(2)** reimbursement for expenses (including but not limited to medical expenses, hospital expenses and wages) paid or incurred by such other person, firm or organization; or

**(3)** any obligation to share damages with or repay someone who must pay damages because of the injury.

All other terms and conditions of this policy remain unchanged.

© Allianz Global Corporate & Specialty. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc with its permission

American Automobile Insurance Company

# LIQUOR LIABILITY COVERAGE FORM

General..................................................................................................................... 1

Section I – Liquor Liability Coverage ............................................................... 1

Supplementary Payments.................................................................................. 2

Section II – Who Is An Insured ........................................................................ 2

Section III – Limits of Insurance ..................................................................... 3

Section IV – Liquor Liability Conditions........................................................ 3

Section V – Definitions ..................................................................................... 5

© Allianz Global Corporate & Specialty. All rights reserved
Includes copyrighted material of Insurance Services Office, Inc with its permission

COMMERCIAL GENERAL LIABILITY
CG 00 33 12 07

# LIQUOR LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – LIQUOR LIABILITY COVERAGE

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

  **b.** This insurance applies to "injury" only if:

    **(1)** The "injury" occurs during the policy period in the "coverage territory"; and

    **(2)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "injury" or claim, knew that the "injury" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "injury" occurred, then any continuation, change or resumption of such "injury" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim, includes any continuation, change or resumption of that "injury" after the end of the policy period.

  **d.** "Injury" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim:

    **(1)** Reports all, or any part, of the "injury" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "injury"; or

    **(3)** Becomes aware by any other means that "injury" has occurred or has begun to occur.

**2. Exclusions**

This insurance does not apply to:

  **a. Expected Or Intended Injury**

    "Injury" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

  **b. Workers' Compensation And Similar Laws**

    Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

   © ISO Properties, Inc., 2006     □

**c. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

    **(a)** Employment by the insured; or

    **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the "injury".

**d. Liquor License Not In Effect**

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

**e. Your Product**

"Injury" arising out of "your product". This exclusion does not apply to "injury" for which the insured or the insured's indemnitees may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

**f. Other Insurance**

Any "injury" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the limits of insurance.

This exclusion does not apply if the other insurance responds to liability for "injury" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

**g. War**

"Injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**1.** All expenses we incur.

**2.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**3.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**4.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**5.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**6.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

**7.** Expenses incurred by the insured for first aid administered to others at the time of an event to which this insurance applies.

These payments will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

© ISO Properties, Inc., 2006

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

**(1)** "Injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above; or

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(a)** or **(b)** above.

**(2)** "Property damage" to property:

**(a)** Owned or occupied by, or

**(b)** Rented or loaned

to that "employee", any of your other "employees", by any of your partners or members (if you are a partnership or joint venture), or by any of your members (if you are a limited liability company).

**b.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**b.** Coverage does not apply to "injury" that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for all "injury" as the result of the selling, serving or furnishing of alcoholic beverages.

**3.** Subject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all "injury" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – LIQUOR LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

 © ISO Properties, Inc., 2006 □

**2. Duties In The Event Of Injury, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "injury" took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any "injury".

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

**b. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**2.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the "injury" occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the "injury" arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above; or

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**3.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**4.** "Executive Officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**5.** "Injury" means damages because of "bodily injury" and "property damage", including damages for care, loss of services or loss of support.

**6.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**7.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

**8.** "Suit" means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**9.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

© ISO Properties, Inc., 2006

**10.** "Your product":

   **a.** Means:

      **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         **(a)** You;

         **(b)** Others trading under your name; or

         **(c)** A person or organization whose business or assets you have acquired; and

      **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product", and

      **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

© ISO Properties, Inc., 2006

CG 00 33 12 07    □

# SIGNATURE PAGE

IN WITNESS WHEREOF, the Company indicated on the Declarations Page of the policy has caused the policy to be signed by its President and Secretary.

_Secretary_

_President_

© Allianz Global Corporate & Specialty. All rights reserved

Case 4:22-cv-00459-MW-MAF   Document 1-1   Filed 12/21/22   Page 80 of 102

**IN THE CIRCUIT COURT OF THE SECOND JUDICAL CIRCUIT,
IN AND FOR FRANKLIN COUNTY, FLORIDA**

DAPHNE BARRANCO,

      Plaintiff,

v.                               Case No.: 2019 CA 0152

L.O.L.A.Q. LLC d/b/a HARRY A'S and
DONALD SANDERS, JR.,

      Defendants.

_____/

## PLAINTIFF'S FIRST AMENDED COMPLAINT

      Plaintiff, DAPHNE BARRANCO ("Plaintiff"), by and through her undersigned counsel, hereby brings suit against the Defendants, L.O.L.A.Q. LLC d/b/a HARRY A'S and DONALD SANDERS, JR.  In support thereof, Plaintiff would state as follows:

1.     This is a cause of action for damages in excess of $15,000.00, exclusive of costs and attorney's fees.

2.     At all times material hereto, Plaintiff, DAPHNE BARRANCO, an adult female, was a resident of Dale County, Alabama.

3.     At all times material hereto, the Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S was a Florida Limited Liability Company, authorized to conduct and was conducting business in Franklin County, Florida. Defendant's registered agent, James Kourkoulis, is deceased and a new registered agent has yet to be named, which hereby constitutes the Secretary of State of Florida as defendant's agent for the service of process in any action or proceeding against the defendant. This court has jurisdiction pursuant to sections 48.161 and 48.193, Florida Statutes.



Page 1 of 9

4.      That at all times material hereto, the Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S operated a restaurant, bar and nightclub located at or near 28 West Bay Shore Drive, in St. George Island, Florida.

5.      That at all times material hereto, Defendant, DONALD SANDERS, JR., an adult male, was a resident of Franklin County, Florida.

6.      That at all times material hereto, the Defendant, DONALD SANDERS, JR. was hired, retained and/or employed by the Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, to perform disk jockey and/or entertainment services.

## **FACTUAL ALLEGATIONS**

7.      That on or about August 31, 2018 the Plaintiff, DAPHNE BARRANCO, and her husband were patrons and business invitees of the Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S.

8.      That on August 31, 2018, the Defendant, DONALD SANDERS, JR., initiated a physical confrontation and altercation with Plaintiff's husband on Defendant's premises.

9.      Defendant, DONALD SANDERS, JR., assaulted and physically battered Plaintiff's husband causing him and the Defendant, DONALD SANDERS, JR., to fall onto the Plaintiff, thereby causing her to sustain serious injuries.

10.     The altercation was witnessed by one or more of Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, agents, employees, and/or security personnel on duty.

11.     No agents, employees, and/or security personnel of the Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, attempted to restrain or otherwise prevent the Defendant, DONALD SANDERS, JR., from attacking the Plaintiff's husband or upon seeing the attack, stopping the Defendant, DONALD SANDERS, JR., from causing further harm.

12.     As a result of the attack by Defendant, DONALD SANDERS, JR., upon the Plaintiff's husband and the failure of L.O.L.A.Q. LLC d/b/a HARRY A'S to protect the Plaintiff's husband and Plaintiff and/or to intervene in the attack, Plaintiff sustained bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care, and treatment.

## COUNT 1 – LIABILITY OF DEFENDANT, L.O.L.A.Q. LLC d/b/a HARRY A'S FOR NEGLIGENT SECURITY

13.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 12 as if fully set forth herein.

14.     That at all times material hereto, the Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, maintained, controlled, and/or supervised its premises, and had a duty to implement reasonable security measures upon its business premises in order to ensure the safety of its invitees.

15.      Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, was negligent and breached its duties of reasonable care for the safety and protection of the public, including the Plaintiff, in all or more of the following ways:

    a.  By failing to provide adequate security for the customers and invitees of the subject premises;

    b.  By failing to institute sufficient safety measures to protect the patrons of the subject premises;

    c.  By failing to have competent security personnel to protect users, customers, and invitees of the subject premises;

    d.  By failing to properly train security personnel to protect customers and invitees of the subject premises;

    e.   By failing to provide adequate staffing of security; and

    f.   By failing to implement adequate security policies, security measures, and security procedures necessary to protect the Plaintiff, and other patrons of the subject premises.

16.    As a direct and proximate result of these acts and omissions of L.O.L.A.Q. LLC d/b/a HARRY A'S, the Plaintiff sustained bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment.

    WHEREFORE the Plaintiff, DAPHNE BARRANCO, demands judgment against Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, for damages, litigation costs, and such other relief this Court deems just and proper. Plaintiff further demands a jury trial on all issues so triable.

## COUNT II – LIABILITY OF DEFENDANT L.O.L.A.Q. LLC d/b/a HARRY A'S FOR NEGLIGENT HIRING

17.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 12 as if fully set forth herein.

18.    At all times material hereto, Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, had a legal duty to refrain from hiring employees who posed a threat to its customers and invitees. As such, Defendant L.O.L.A.Q. LLC d/b/a HARRY A'S, had a legal duty to conduct an appropriate investigation and evaluation of the Defendant, DONALD SANDER, JR.'S fitness to interact with Defendant L.O.L.A.Q. LLC d/b/a HARRY A'S customers and invitees prior to hiring Defendant, DONALD SANDERS, JR., Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, owed said duties to the public, in general, and to the Plaintiff, an invitee, in particular.

19.    Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, breached said duties by hiring Defendant, DONALD SANDERS, JR, when it knew, or should have known, that Defendant,

DONALD SANDERS, JR., was unfit to interact with Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S customers and invitees.

20.     As a proximate result of Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S negligence, Plaintiff suffered bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of the ability to earn money.  These losses are either permanent or continuing and Plaintiff will suffer said losses in the future.

        WHEREFORE, the Plaintiff, DAPHNE BARRANCO, demands judgment against Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, for damages, litigation costs, and such other relief this Court deems just and proper.  Plaintiff further demands a jury trial on all issues so triable.

## COUNT III – LIABILITY OF DEFENDANT, L.O.L.A.Q. LLC d/b/a HARRY A'S FOR NEGLIGENT SUPERVISION

21.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 12 as if fully set forth herein.

22.     Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, had a legal duty to adequately monitor and supervise Defendant, DONALD SANDERS, JR., for indications that he posed a threat to Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S customers and invitees, and upon discovery of such a threat, Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, had a further legal duty to undertake appropriate preventative measures, such as an investigation, reprimand, and/or termination.  Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, owed said duty to the public, in general, and to Plaintiff, an invitee, in particular.

23.     Had Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, adequately monitored and supervised Defendant, DONALD SANDERS, JR., then Defendant L.O.L.A.Q. LLC d/b/a HARRY A'S would have discovered that he was unfit to serve as their employee and/or agent.

24.     Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, could have and should have, with the exercise of due diligence, properly monitored and supervised Defendant, DONALD SANDERS, JR., so that he was either reprimanded and advised against engaging in conduct which posed a threat to Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S customers and invitees, or terminated him so that he could not harm Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, customers and invitees.

25.     As a proximate result of Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S negligence, Defendant, DONALD SANDERS, JR., was permitted to have unsupervised contact with Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S customers and invitees on or about August 31, 2018, and as such, Defendant, DONALD SANDERS, JR., was in a position to perpetrate the aforementioned battery and cause harm upon the Plaintiff.

26.     As a further proximate result of Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S negligence, Plaintiff suffered bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, and loss of the ability to earn money.  These losses are either permanent or continuing and Plaintiff will suffer said losses in the future.

        WHEREFORE, the Plaintiff, DAPHNE BARRANCO, demands judgment against Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, for damages, litigation costs, and any other relief this Court deems just and proper.  Plaintiff further demands a jury trial on all issues so triable.

### COUNT IV – LIABILITY OF DEFENDANT, L.O.L.A.Q. LLC d/b/a HARRY A'S FOR NEGLIGENT RETENTION

27.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 12 as if fully set forth herein.

28.     Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, had a legal duty to promptly discharge employees and/or agents who posed a threat to its customers and invitees.  Said Defendant owed said duty to the public, in general, and to Plaintiff, an invitee, in particular.

29.     As of August 31, 2018, Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, knew or should of known that Defendant, DONALD SANDERS, JR, had a propensity for violence.

30.     Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, breached said duty by negligently retaining Defendant, DONALD SANDERS, JR., despite the fact that it knew, or should have known, he was unfit to interact with Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, customers and invitees.

31.     Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, could have and should have, with the exercise of due diligence, discharged Defendant, DONALD SANDERS, JR., prior to August 31, 2018.

32.     As a proximate result of Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S negligence, Defendant, DONALD SANDERS, JR., was an employee and/or agent of Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, on or about August 31, 2018, and as such, Defendant, DONALD SANDERS, JR., was in a position to perpetrate the aforementioned battery and cause harm to Plaintiff.

33.     As a further proximate result of Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S negligence, Plaintiff suffered bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, and loss of the ability to earn money.  These losses are either permanent or continuing and Plaintiff will suffer said losses in the future.

WHEREFORE, the Plaintiff, DAPHNE BARRANCO, demands judgement against Defendant, L.O.L.A.Q. LLC d/b/a HARRY A'S, for damages, litigation costs, and any other relief this Court deems just and proper.  Plaintiff further demands a jury trial on all issues so triable.

## COUNT V – LIABILITY OF DEFENDANT, DONALD SANDERS, JR., FOR THE INTENTIONAL TORT OF ASSAULT AND BATTERY

34.    Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 12 as if full set forth herein.

35.    On August 31, 2018, Defendant, DONALD SANDERS, JR., assaulted and battered Plaintiff by shoving her husband, Mr. Barranco, into her person, causing her to fall and sustain injuries.

36.    As a direct and proximate result of the assault and battery as described above, Plaintiff suffered bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, and loss of the ability to earn money.  These losses are either permanent or continuing and Plaintiff will suffer said losses in the future.

WHEREFORE, the Plaintiff, DAPHNE BARRANCO, demands judgement against Defendant, DONALD SANDERS, JR., for damages, litigation costs, and any other relief this Court deems just and proper.  Plaintiff further demands a jury trial on all issues so triable.

Respectfully submitted this 18th day of December, 2019.

Christopher John Nicholas (FBN 768790)
**FASIG⎪BROOKS**
3522 Thomasville Road, Suite 200
Tallahassee, Florida 32309
Phone: (850) 224-3310
Fax: (850) 224-3433
Email: chris@fasigbrooks.com
Paralegals: renee@fasigbrooks.com;
lisak@fasigbrooks.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to the following parties via e-service through the Florida courts e-filing portal and U.S. Mail on this 18th day of December, 2019.

Donald Sanders, Jr.
201 Coach Wagoner Blvd.
Apalachicola, FL 32320

Christopher John Nicholas (FBN 768790)
**FASIG⎪BROOKS**



**SPECIALTY INSURANCE**

1610 ROUTE 88 WEST, SUITE 205 * BRICK, NJ 08724
(732) 701-8966 – (888) 729-7900 * FAX: (732) 701-8969
E-mail: cmoffett@specialtyagency.com

December 27, 2018

Fasig Brooks Law Offices
3522 Thomasville Rd. Suite 200
Tallahassee, FL 32309

Att: Christopher Nicholas

Re:
Our File No.   :     59905
Our Insured   :     Harry A's
Claimant       :     Daphne Barranco
Date of Loss  :     08/31/2018
Location        :     28 West Bayshore Drive, St. George Island, FL 32328

Dear Mr. Nicholas,

We are in receipt of your letter dated November 27th. Per our review of the insured's policy and your client's claim, it is alleged Mrs. Barranco sustained personal injuries due to an altercation that arose on the premises. We have determined no coverage exists as the policy contains an Assault & Battery exclusion.

A copy of this form has been attached for your review.

Sincerely,

Conner Moffett
Casualty Claims Representative
Claims Department

**EXHIBIT**

**C**

**Christopher Nicholas**

| | |
|---|---|
| **From:** | Bill Harris <bharris@specialtyagency.com> |
| **Sent:** | Monday, August 9, 2021 3:26 PM |
| **To:** | 'Michael Golding' |
| **Cc:** | Christopher Nicholas |
| **Subject:** | FW: Barranco v Harry A's - Case # 19000152CAAXMX / Policy Number SISAM 02005-14 / 59904 |
| **Importance:** | High |

Mike,

Are you able to assist? This was a claim which allegedly occurred on 9/25/2014. It was not reported to the carrier (STARR) until 12/13/2018.

The claim was denied for Late Notice.

Please direct this to someone in your organization responsible for GL/BI claims.

Thanks.

Bill Harris
V.P. Claims
Specialty Insurance Agency
1610 Route 88 Ste 205
Brick, NJ 08724
(732) 701-8960  -  Fax (732) 701-8969
bharris@specialtyagency.com

**From:** Christopher Nicholas <chris@fasigbrooks.com>
**Sent:** Monday, August 9, 2021 12:38 PM
**To:** Bill Harris <bharris@specialtyagency.com>
**Subject:** RE: Barranco v Harry A's - Case # 19000152CAAXMX / 59904
**Importance:** High

Hi Bill,

I am following up on a complete copy of the insurance policy. Please provide asap.

    Thank you,
          Chris



**Fasig | Brooks**
LAW OFFICES

## Christopher J. Nicholas
### Partner
chris@fasigbrooks.com

3522 Thomasville Road, Suite 200
Tallahassee, FL 32309
(850) 224-3310
(850)-224-3439 (f)



THIS E-MAIL IS INTENDED ONLY FOR THE ABOVE-NAMED RECIPIENT(S) AND IS
CONFIDENTIAL.

This e-mail message and attachments, if any, are intended solely for the use of the
addressee hereof. In addition, this message and attachments, if any, may contain
information that is confidential, privileged and exempt from disclosure under
applicable law. If you are not the intended recipient of this message, you are
prohibited from reading, disclosing, reproducing, or otherwise using this
transmission. Delivery of this message to any person other than the intended
recipient is not intended to waive any legal right or privilege. If you have received
this message in error, please promptly notify the sender by e-mail and immediately
delete this message and attachments, if any, from your system.

**From:** Christopher Nicholas <chris@fasigbrooks.com>
**Sent:** Monday, August 2, 2021 7:08 PM
**To:** bharris@specialtyagency.com
**Subject:** RE: Barranco v Harry A's - Case # 19000152CAAXMX / 59904

Hi Bill,

With regard to the above matter, please send me a complete copy of the insurance policy. I requested it pursuant to FS
627.4137 but only ever received excerpts; I have attached a copy of my statutory request as well as the excerpts
received.

Thank you,
                    Chris



## Fasig | Brooks
LAW OFFICES

### Christopher J. Nicholas
Partner
chris@fasigbrooks.com

3522 Thomasville Road, Suite 200
Tallahassee, FL 32309
(850) 224-3310
(850)-224-3433 (f)



**THIS E-MAIL IS INTENDED ONLY FOR THE ABOVE-NAMED RECIPIENT(S) AND IS CONFIDENTIAL.**

This e-mail message and attachments, if any, are intended solely for the use of the addressee hereof. In addition, this message and attachments, if any, may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, or otherwise using this transmission. Delivery of this message to any person other than the intended recipient is not intended to waive any legal right or privilege. If you have received this message in error, please promptly notify the sender by e-mail and immediately delete this message and attachments, if any, from your system.

**From:** Bill Harris <bharris@specialtyagency.com>
**Sent:** Wednesday, January 13, 2021 3:11 PM
**To:** Christopher Nicholas <chris@fasigbrooks.com>; Kamela Boniello <KamelaB@fasigbrooks.com>; Lisa Kubancek <lisak@fasigbrooks.com>
**Subject:** Re: Barranco v Harry A's - Case # 19000152CAAXMX / 59904

Chris,

Thank you for the courtesy copy of the attached Case Management Conference Notice.

American Automobile Insurance Company disclaimed coverage for this alleged occurrence on December 19th 2018 as indicated in the attached letter.

American Automobile Insurance Company is not representing Harry A's in this matter at all, and will not be responding to the Case Management Notice.

We do not know who is representing Harry A's in this regard, and would recommend you contact Harry A's directly.

Regards,

Bill Harris
V.P. Claims
Specialty Insurance Agency
1610 Route 88 Ste 205
Brick, NJ 08724
(732) 701-8960  -  Fax (732) 701-8969
bharris@specialtyagency.com

IN THE CIRCUIT COURT OF THE SECOND JUDICAL CIRCUIT,
IN AND FOR FRANKLIN COUNTY, FLORIDA

DAPHNE BARRANCO,

        Plaintiff,

        v.

L.O.L.A.Q. LLC d/b/a HARRY A'S
RESTAURANT, BAR, NIGHTCLUB,

        Defendant.

_____/

Case No.: 19000152CAAXMX

## ASSIGNMENT

THIS ASSIGNMENT is executed by Defendant, L.O.L.A.Q. LLC d/b/a Harry A's Restaurant, Bar, Nightclub (hereinafter "Harry A's) for the benefit of Plaintiff, DAPHNE BARRANCO (hereinafter "Barranco').

WITNESSETH:

WHEREAS, Barranco has sued Harry A's for damages arising out of the incident that occurred on August 31, 2018, as set forth in the Amended Complaint presently pending in this litigation; and

WHEREAS, Barranco and Harry A's have entered into a Settlement Agreement with respect to this litigation containing, *inter alia,* the following terms and conditions:

1.     The assignment of Harry A's rights and claims against American Automobile Insurance Company (hereinafter "American") will be executed, and all such rights will be assigned to Barranco, as described below.

2.     Harry A's will assign to Barranco all legal rights, remedies and causes of action with Harry A's has or may now have, and/or in the future could have, against any and all insurance agents, insurance agencies, and insurance companies, including American, which arise either from the incident itself, or from American's investigation, claims handling, and denial of coverage for Barranco's claims against it resulting from the incident; so that Barranco may proceed to bring any and all legal claims and actions Barranco deems necessary, including, but not limited to, causes of action arising from the conduct (acts and omissions) of American in wrongfully denying coverage for Barranco's bodily injury claims against Harry A's, and American's failure to defend and indemnify Harry A's in regard to the incident. Harry A's agrees to proceed with due diligence and to cooperate fully with Barranco in the execution of the assignment, and to cooperate fully in



EXHIBIT
D

giving testimony, providing documents, and otherwise assisting Barranco in the prosecution of the assigned claim against American.

NOW, THEREFORE, in further consideration of the obligations, duties, mutual promises and considerations of the aforesaid Settlement Agreement and those set forth in this Assignment and for other good and valuable consideration:

1.    By signature below, Harry A's does hereby assign to Barranco all legal rights, remedies, and causes of action which Harry A's presently has, or may have in the future, against any and all insurance agents, insurance agencies, and insurance companies, including by not limited to American, arising out of the incident which occurred on August 31, 2018 in which Daphne Barranco was injured (hereinafter "the incident").

2.    The purpose of this assignment is to enable Barranco to assert and obtain recovery upon any and all legal actions and claims, if Barranco deems such actions necessary, including but not limited to all contractual, statutory, and common law causes of action belonging to Harry A's prior to the execution of this Assignment, and arising from the conduct of American in wrongfully denying coverage for the bodily injury claims of Barranco against Harry A's arising from the incident, and in failing to defend and indemnify Harry A's in regard to Barranco's claims against it relating to the incident.

3.    In further consideration of the promises hereunto made, Harry A's agrees to proceed with due diligence and to cooperate fully with Barranco in the execution of this Assignment, and in the prosecution by Barranco of all legal claims and action against American that Barranco deems necessary.

4.    This Assignment is intended to comport with Paragraphs 2 and 3 of the Settlement Agreement between Barranco and Harry A's and is to be executed simultaneously with the execution of the Settlement Agreement.

IN WITNESS WHEREOF, Harry A's, by signature below, acknowledges that it has reviewed the above Assignment, conferred with counsel of its own choosing, has had this Assignment read and explained to it and does execute and make this Assignment with full knowledge of its contents and of its legal significance.

[this space intentionally blank]

DocuSigned by:

*James P. Kourkoulis*

99C7630209FD485...

JAMES P. KOURKOULIS, II, as
Managing Member of L.O.L.A.Q. LLC d/b/a
Harry A's

STATE OF _____
COUNTY OF _____

     Before me, the undersigned authority, this ___ day of _____, 2021, personally appeared James P. Kourkoulis, II, who is ( ) personally known to me; or ( ) who has produced the following as identification_____; and who, after being duly sworn, deposes and says that he has read and understands the foregoing Assignment, and that he has executed the Assignment for the purposes set forth therein.

_____
NOTARY PUBLIC

IN THE CIRCUIT COURT OF THE SECOND JUDICAL CIRCUIT,
IN AND FOR FRANKLIN COUNTY, FLORIDA

DAPHNE BARRANCO,

      Plaintiff,

                                       Case No: 19000152CAAXMX

    v.

L.O.L.A.Q. LLC d/b/a HARRY A's,

      Defendant.

_____/

### **FINAL JUDGMENT**

    THIS FINAL JUDGMENT was presented to the Court by counsel for the Plaintiff,

DAPHNE BARRANCO, and counsel for the Defendant, L.O.L.A.Q. LLC d/b/a HARRY A's,

who stipulate and agree to its entry. Accordingly,

    IT IS ORDERED AND ADJUDGED that the Plaintiff, DAPHNE BARRANCO, shall

recover judgment in the amount of $304,926.47 from the Defendant, L.O.L.A.Q. LLC d/b/a

HARRY A's, that shall bear interest at the legal rate established pursuant to section 55.03, Florida

Statutes, currently 4.25% a year, FOR WHICH LET EXECUTION NOW ISSUE.

    DONE AND ORDERED in Chambers, Franklin County, Florida, this 10 day

of September, 2021.

                                                    _____
                                           HONORABLE JONTHAN SJOSTROM
                                         CIRCUIT COURT JUDGE

Copies furnished to: Christopher Nicholas, Esq., Kellianne Barkley, Esq. and
Douglas Smith, Esq.

**EXHIBIT
E**

Page 1 of 1

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR FRANKLIN COUNTY, FLORIDA

DAPHNE BARRANCO, individually and as assignee of

L. O. L. A. Q., LLC d/b/a HARRY A'S REST BAR, NIGHTCLUB

      **Plaintiff,**

**vs.**

CASE NO.: 22-000061-CA

AMERICAN AUTOMOBILE

INSURANCE COMPANY

      **Defendant.**

_____/

RECEIVED
SEP 1 2022
Clerk Circuit Court
Franklin County Florida

## UNIFORM ORDER FOR ACTIVE DIFFERENTIAL CIVIL CASE MANAGEMENT

    In compliance with Florida Supreme Court directives on active, differential civil case management established in Supreme Court Administrative Order AOSC20-23, Amendment 12, and Second Judicial Circuit Administrative Order 21-04, all parties in the above-styled cause are bound by this Case Management Order.

**Plaintiff shall serve this order on all parties with service of the original complaint. Strict enforcement is required unless good cause is shown for an exception or as otherwise required by law.**

## I. PROJECTED TRIAL DATE

    All **COUNTY COURT Civil cases** are designated **STREAMLINED CASES** with a projected trial date of **360 days** from the date of filing of the complaint.

    All **CIRCUIT COURT Civil cases** for which the complaint **does not demand trial by jury** are designated **STREAMLINED CASES** with a projected trial date of **360 days** from the date of filing of the complaint.

    All **CIRCUIT COURT Civil cases** for which the **complaint demands trial by jury** are **GENERAL CASES** with a projected trial date of **540 days** from the date of filing of the complaint.

    A change in the above designations may be made by the presiding judge on the judge's own initiative or upon motion of any party. Should any party assert that a civil case should be treated other than designated above, such party shall file

that a civil case should be treated other than designated above, such party shall file a written motion requesting such change and the motion shall be expeditiously resolved by the presiding Judge.

## II. Notice that Cause is at Issue and Firm Trial Date

The parties **must file a *Joint* Notice** that the Cause is at Issue **no later than 15 days after the pleadings are closed.** In the event of a dispute, either party may file a motion and request a hearing to determine if the cause is at issue.

Upon joint notice or judicial determination that the cause is at issue, the Court will schedule a Firm Trial Date consistent with the Projected Trial Date above unless either party requests a different date in their Notice that the Cause is at Issue. Should either party request a Firm Trial Date different than the Projected Trial Date, the Plaintiff shall expeditiously set a case management conference to determine the Firm Trial Date.

## III. Mandatory Deadlines for *Streamlined* Cases

If this case is designated as a STREAMLINED CASE, the following deadlines shall apply and, by directive of the Florida Supreme Court, must be strictly enforced unless good cause is shown for an exception or as otherwise required by law:

120 days after filing:  Service of Complaints
150 days after filing:  Service under any Extension of Time
180 days after filing: Adding New Parties
210 days after filing:  Resolution of Objections to Pleadings and Motions to Dismiss
270 days after filing:  Completion of Fact and Expert Discovery
270 days after filing:  Resolution of Pretrial Motions, including Motions for Summary Judgment

## IV. Mandatory Deadlines for *General* Cases

If this case is designated as a GENERAL CASE, the following deadlines shall apply and, by directive of the Florida Supreme Court, must be strictly enforced unless good cause is shown for an exception or as otherwise required by law:

120 days after filing:  Service of Complaints
180 days after filing:  Service under any Extension of Time
210 days after filing:  Adding New Parties

270 days after filing:  Resolution of Objections to Pleadings and Motions to Dismiss
400 days after filing:  Completion of Fact and Expert Discovery
450 days after filing:  Resolution of Pretrial Motions, including Motions for Summary Judgment

## V. Mediation
All parties must mediate unless excused by court order for good cause shown or as otherwise required by law and in compliance with Rules of Civil Procedure 1.700 - 1.730.

## VI. Noncompliance
**By Order of the Florida Supreme Court, strict, good faith compliance with this Uniform Order for Active, Differential Civil Case Management is required unless good cause is shown for an exception or as otherwise required by law.  These procedures and time standards do not supplant any existing rule, statute, or law.**

**Failure to appear at the pretrial conference or failure to comply with the terms of this order may result in such sanctions as are just and lawful including:  an immediate ex parte hearing and entry of final judgment of default or dismissal, limitation of witnesses or other evidence, striking of claims or defenses, or imposition of attorney fees or costs.**

## VII. Hearings by Audio-Video Technology
During the COVID-19 Public Health Emergency, all hearings other than jury selection and trial *shall* be conducted consistent with Florida Supreme Court and Second Circuit Administrative Order by audio-video technology.  Each judge is responsible to establish the process for such audio-video technology hearings by notice of hearing including technology access.

After the conclusion of the COVID-19 Public Health Emergency all hearings other than jury selection and trial *may* be conducted by audio-video technology.  Each judge is responsible to establish the process for such audio-video technology hearings by notice of hearing including technology access.

DATED:

SEPTEMBER 1, 2022

JONATHAN SJOSTROM
Circuit Judge

Copy Furnished to: Plaintiff's Counsel via E-service

3 of 4

## SUPPLEMENT TO CIVIL CASE MANAGEMENT ORDER

If, at the time the Uniform Order For Active Differential Civil Case Management ("Order") is filed, service on the Defendant(s) has already been made or process provided to a process server, the Plaintiff may comply with the second (in bold) paragraph of the Order by promptly providing a copy of the Order to the Defendant(s) by U.S. Mail or by Electronic Mail. The Plaintiff shall then file a certificate of service documenting that this Order has been provided to the Defendant(s) in this manner.

IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT, IN AND FOR
FRANKLIN COUNTY, FLORIDA

DAPHNE BARRANCO, Individually and
a/a/o L.O.L.A.Q. LLC d/b/a HARRY A'S
RESTAURANT, BAR, NIGHTCLUB

        Plaintiff,

                                        CASE NO.:  22-000062-CA

vs.

AMERICAN AUTOMOBILE INSURANCE
COMPANY,

        Defendant.

_____/

**DEFENDANT'S MOTION FOR EXTENSION
OF TIME TO RESPOND TO PLAINTIFF'S COMPLAINT**

      DEFENDANT, American Automobile Insurance Company, respectfully requests this Honorable Court to enter an order granting an extension of time to respond to Plaintiff's Complaint, and in support thereof states:

      1.      The undersigned counsel was recently retained to represent the Defendant and has not had sufficient time to review the materials relating to the claim and lawsuit.

      2.      Defendant requires an extension of time to adequately respond to Plaintiff's Complaint.

      3.      This motion is made in good faith and no party will be prejudiced by the granting of the motion.

      WHEREFORE, American Automobile Insurance Company, respectfully requests this Honorable Court enter an Order granting an extension of time to respond to Plaintiff's Complaint.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served by e-Filing with the

Clerk of Court and via Florida e-Filing Portal to the following, this 20th day of December, 2022.

Christopher J. Nicholas (FBN: 768790)
**FASIG | BROOKS**
3522 Thomasville Road, Suite 200
Tallahassee, FL  32309
(850) 224-3310 Telephone
(850) 224-3433 Facsimile
Email: Chris@fasigbrooks.com
pamela@fasigbrooks.com
lisak@fasigbrooks.com
*Counsel for Plaintiff*

s/ *Brett M. Carey*
BRETT M. CAREY
Florida Bar No.:  0091355
E-mail:  bcarey@rumberger.com (primary)
          docketingorlando@rumberger.com and
          bcareysecy@rumberger.com (secondary)
RUMBERGER, KIRK & CALDWELL, P.A.
300 South Orange Avenue
Suite 1400
Orlando, Florida 32801
Tel:  407.872.7300
Fax:  407.841.2133
Attorneys for Defendant

2

17444128.v1